Philip RESSEGIUE, Plaintiff,

v.

SECRETARY OF the DEPARTMENT OF HEALTH, EDUCATION AND WELFARE OF the UNITED STATES, Defendant.

No. 75 C 1624.

United States District Court, E. D. New York.

Jan. 13, 1977.

Philip Ressegiue, pro se.

David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., for defendant, by Constance M. Vecellio, Asst. U. S. Atty., Brooklyn, N. Y.

## MEMORANDUM OF DECISION

NEAHER, District Judge.

This action for judicial review of a denial of Child's Disability Insurance Benefits under the Social Security Act was initially referred to a United States Magistrate to review the administrative record, hear the parties' contentions, and report his recommendations for disposition. See *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The Magistrate's report has been received together with objections thereto filed by plaintiff's mother, Mrs. Susan Ressegiue, who has represented him throughout the prosecution of his claim except for the hearing before the administrative law judge.[1] The Magistrate's report recommended affirmance of the defendant Secretary's determination, but after careful consideration of that report and an independent "searching investigation" of the entire record, the court is persuaded that the Sec-

---

1. Lawrence A. Klein, Esq., appeared as an attorney at the hearing to "help [plaintiff's parents] at this particular hearing and represent them . . . and do whatever is unnecessary." Tr. 45. This appears to have been his only participation except for a letter to the administrative law judge advising that plaintiff "will be available for examinations in the home, but will not leave the house." Tr. 151.

retary's determination cannot be upheld on the present record.

The following facts are beyond dispute. The "child" in this case is the nominal plaintiff *pro se,* Philip Ressegiue, now 31 years of age. He was born on April 27, 1945, and for Social Security purposes attained the age of 18 on April 26, 1963, and the age of 22 on April 26, 1967. His total earnings reported for Social Security purposes amounted to $18.00 as of April 30, 1973, the date his mother filed an application for disability insurance benefits on his behalf.

Plaintiff's own lack of earnings and continued dependency to date appear unquestionably to be related to a severe juvenile brittle diabetic condition first diagnosed in April 1963, when he was about 18 years old, which concededly has continued to the present time. He was then placed on regular insulin and upon release from the hospital continued attending Brooklyn College on a reduced schedule, taking one or two courses a semester until the spring of 1969, when he discontinued. He has never been gainfully employed, rarely leaves the house, continues to be dependent upon his parents for care and support, and his entitlement to Social Security benefits necessarily depends upon his retired father's earnings record.

The Magistrate correctly recognized that a reviewing court is bound by the Secretary's findings of fact which are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" has been defined as "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Abiding by that standard does not mean that the court must abdicate its function of review. The court is required to scrutinize the whole record to determine whether the Secretary's findings have rational support in the evidence, and if reliance is placed on one portion of the record in disregard of over-balancing evidence to the contrary, the court may then interfere with the Secretary's conclusion. *Hofacker v. Weinberger,* 382 F.Supp. 572, 576 (S.D.N.Y.1974). Furthermore, although the burden of proof of disability is on the claimant for benefits, the court is not bound to sustain the Secretary's denial "where the applicant has raised a serious question and the evidence affords no sufficient basis for the Secretary's negative answer." *Kerner v. Fleming,* 283 F.2d 916, 922 (2 Cir. 1960).

In this case the administrative law judge conceded "[t]here is absolutely no question that the claimant presently has a severe diabetic problem" and that the problem had its onset in 1963, some four years before the claimant attained his 22nd birthday. Plaintiff would be entitled to Child's Disability Benefits, however, only if there was substantial evidence that prior to his 22nd birthday his diabetic condition disabled him from engaging "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). The Social Security Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In denying benefits to plaintiff, the Secretary adopted, among others, the following finding of the administrative law judge:

"4. The evidence fails to establish that the claimant's impairments were disabling at a time prior to April 26, 1967, when he attained the age of 22."

The administrative law judge was of the view that the foregoing finding was demonstrated by a "preponderance of the credible evidence." This could only mean that the judge saw relevant evidence in the record which might reasonably be accepted as supporting the conclusion that plaintiff's conceded diabetic condition was not such as to disable him from engaging in substantial gainful activity before his 22nd birthday. ■ A word by word reading of the record fails to uncover such evidence. In-

deed, the evidence, such as it is, would demonstrate the contrary. True, the plaintiff himself did not appear at the hearing before the administrative law judge, although requested to do so, and has declined to submit to examination by a physician at government expense unless the examination is conducted at home. More will be said about this later.

The administrative record includes the testimony of plaintiff's mother, documentary evidence consisting of reports prepared by Social Security Administration employees of interviews with the mother, correspondence with hospitals and reports from several physicians who treated plaintiff, and his Brooklyn College transcript. No doctor testified and the administrative law judge did not avail herself of the services of a medical consultant to review and advise concerning the medical reports.

Plaintiff's treating doctor was Dr. Michael S. Distefano, a general practitioner since 1931, who had retired to Florida about 1970. His report shows that he was the family doctor who had treated plaintiff from infancy. At the time plaintiff was hospitalized in April 1963, it was Dr. Distefano who diagnosed him as having juvenile brittle diabetes mellitis, with complications of hyperexia, furunculosis and acute strep throat. When plaintiff left the hospital the prognosis indicated that his blood sugar levels had been over 220 despite treatment, and that he required a daily injection of 70 units of NPH to be supplemented by regular insulin. He was described as susceptible to systemic (sore throat and tonsilitis) as well as skin and feet infections, that at times he would go into hypoglycemic states for which sugar must be given, and that he had muscular atony with early fatigue. In Dr. Distefano's opinion, plaintiff's condition was permanent "and can only worsen with age. He needs full daily care." In view of these conditions, it was the doctor's further opinion "that, because of the strict and immediate medication as well as the dietary supervision coupled with his general weakened physical condition, this patient is and

has been and will be totally incapacitated for the rest of his life."

The plaintiff was also seen on five occasions between April 16, 1964 and July 17, 1969 by Dr. Yusuf Kologlu, a specialist in internal medicine and cardiovascular disease, whose medical education had been obtained in Turkey and who had practiced in New York since 1962. His report noted complaints by plaintiff of tired feeling and pain and confirmed the diagnosis of diabetes mellitis and variations in blood sugar. Also noted was an increase in plaintiff's dosage of NPH to 80 units and 58 units of an unnamed medication "QID", which means four times a day. Dr. Kologlu noted his physical examination as "unremarkable" and did not find any end organ damage, acidosis, or neuropathy.

On two occasions in March 1973, plaintiff was treated for upper respiratory infections by Dr. Irving Chiteman, a general practitioner who also specialized in internal medicine and had practiced in New York since 1929. Dr. Chiteman's report noted that plaintiff's blood sugar was then at 200 mgms. and added that plaintiff "appeared to be mentally retarded."

The latest report on plaintiff's condition was provided by Dr. Anthony G. Purpura, who treated him upon his admission to Victory Memorial Hospital on August 21, 1974, when he was suffering from diabetic acidosis and dehydration. Plaintiff had not responded to regular medications. Plaintiff's blood sugar rose substantially during his stay. He was apparently uncooperative in refusing to undergo further blood studies, to control his diet, and to make other attempts to control his diabetes. Dr. Purpura noted that he left the hospital "in poor condition with an elevated blood sugar and a BUN."

Plaintiff's mother, the only live witness at the hearing, testified she signed and filed all papers submitted in plaintiff's name in applying for Social Security benefits on his behalf. She described the personal attention she has had to give him and explained his absence from the hearing as due to inability to sleep because he could not di-

gest food properly when lying down. In addition, he had developed a large black spot on his toe and the doctor who ordinarily treated his foot problems had not been able to get to their home to take care of it. Plaintiff has remained in their home at all times except when in hospitals or on occasions when he might accompany them to a movie theater. Although he follows a prescribed diet, it has never worked for him.

At the request of the administrative law judge, Mrs. Ressegiue then described the plaintiff's medical treatment and activities from the time the diabetes was discovered. During the period 1963 to 1969 he was seen by Dr. Distefano several times a month. In addition to Drs. Distefano and Kologlu, he was treated by a series of "emergency doctors" who came to the house from time to time as needed. She recalled he had been on insulin three times a day for a period of about two years, without stabilizing his blood sugar. There was also frequent recurrence of hypoglycemia, which required the administration of sugar. She also mentioned emotional problems.

Mrs. Ressegiue further testified that either she or her husband drove plaintiff to Brooklyn College at night and she remained with him there. On occasion he was able to take a taxi. He stayed up until three or four in the morning, reading or watching TV, and slept late. Aside from school or occasional visits to the movies, he never went out of the house or associated with any friends. He becomes forgetful, nervous, upset and at times acts withdrawn or gets into temper tantrums. In response to questions from the administrative law judge, Mrs. Ressegiue said she was unable to get her son to come out of the house to comply with any requests for examination by doctors. Mr. Klein, the attorney who appeared only at the hearing, echoed the

mother's statements and voiced his own opinion that the plaintiff "is really a sick boy mentally."

The reports of treating physicians regarding plaintiff's illness constitute substantial evidence even though not supported by live testimony. See *Richardson v. Perales, supra.* The diagnosis, prognosis and opinions contained therein cannot be disregarded unless controverted by substantial evidence to the contrary. *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 42 (2 Cir. 1972). There is no contrary medical evidence in this record.

If anything emerges from the record, it is the administrative law judge's doubt that she was getting the whole story about plaintiff's condition and behavior. But due regard for the protection of Social Security trust funds against undeserving claims does not justify a denial of benefits when the only substantial evidence in the record reveals a claimant stricken with an unusual form of severe debilitating diabetes, which has continued unabated to date since original onset prior to plaintiff's 22nd birthday. Clearly, such an abnormality of bodily functions is a "medically determinable physical . . . impairment" within the meaning of the Act, 42 U.S.C. § 423(d)(1) and (3), and the court so holds.[2] That plaintiff's concededly severe diabetic condition may not have been further complicated by end organ damage, neuropathy, or acidosis is not a statutory ground for refusing to consider plaintiff's anatomical or physiological abnormality as a physical impairment "which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). The evidence here shows the condition has lasted continuously since 1963.

The mere fact that during the period 1963–1969 plaintiff was able to attend

---

**2.** "Brittle" diabetes mellitis is by definition a "more severe" type of diabetes which affects a small group of young people "who are extremely difficult or impossible to maintain on what would appear to be the indicated dosage" of insulin because of the "dangers of producing hypoglycemia in such persons." See *The Merck Manual of Diagnosis and Therapy,* 1198

(12th ed.). See also *Diabetes Mellitis* (7th ed., Lilly Research Laboratories), which notes that the brittle diabetic "poses one of the greatest of all therapeutic challenges", and for whom therapy is more difficult to determine. The incidence of such victims ranges from 2 to 10% of the insulin-dependent diabetic population. *Id.* at 97.

**164**

Brooklyn College for two hours a week at night and achieve good grades in some of the courses is no proof that he was not at that time under a "disability" within the meaning of the Act, 42 U.S.C. § 423(d)(1). Attending school or college does not necessarily establish the existence of the bodily conditions normally required for the performance of "substantial gainful activity" nor provide a sure criterion of the presence of such capacity. To be entitled to benefits under the Act, "one need not be completely helpless or unable to function . . . ." *Gold v. Secretary, supra,* 463 F.2d at 41 n. 6.

 There remains for consideration plaintiff's refusal to attend the hearing or be examined by doctors at government expense outside his home. In the circumstances shown in the record, and since the proceeding cannot be viewed as adversarial in nature, if the Secretary desires such an examination, he should be willing and able to make the arrangements necessary to have it performed at the plaintiff's home. In the court's opinion, sufficient information appears to support a finding of good cause therefor. The reported remark of Dr. Chiteman that plaintiff appears to be "mentally retarded" strongly suggests there may be severe emotional, if not mental, problems associated with plaintiff's unfortunate condition, and which may explain his seemingly intransigent attitude. The Social Security Act is a remedial statute, to be broadly construed and liberally applied. *Haberman v. Finch,* 418 F.2d 664, 667 (2 Cir. 1969). Benefits should not be denied because of suspicion that a claim may not be bona fide, when the circumstances indicate that the refusal may be explainable for other good and sufficient reasons.

The defendant's motion for judgment on the pleadings is denied, the determination of the Secretary denying disability benefits to plaintiff is reversed, and the matter is remanded to the Secretary for an award to plaintiff of Child's Disability Benefits pursuant to the provisions of the Social Security Act, unless within 60 days substantial evidence is adduced to support a finding that plaintiff was not under a "disability" on or before April 26, 1967 by reason of the severe diabetic condition he has continuously suffered since before that date.

SO ORDERED.