**Richard CHIAPPA, Plaintiff,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, Defendant.**

**No. 78 Civ. 4213.**

United States District Court,
S. D. New York.

Sept. 2, 1980.

Zwerling & Zwerling, New York City, for plaintiff; Linda Strumpf, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., Southern District of New York, New York City, for defendant; John M. O'Connor, Asst. U. S. Atty., Amy Yourman, Asst. Regional Atty., Dept. of Health, Ed. and Welfare, New York City, of counsel.

SOFAER, District Judge:

 This appeal presents a persistent problem that arises in disability cases. It is the repeated failure of Administrative Law Judges (ALJs) to make specific findings as to (1) the weight they have given to the reports or letters of the applicant's physician; and (2) the credibility of the applicant's testimony, particularly claims of disabling pain. Reviewing courts should not have to guess about such fundamental matters. Nor should they have to infer the ALJ's determinations from suggestive or ambiguous comments, or to imply them from conclusions that permit more than one finding. Telling someone that he or she is unconvincing is far from pleasant work, but it is the essence of a judge's burden. The failure of ALJs to make such findings in disability cases is among the principal causes of the delay and uncertainty that plague applicants, attorneys, government and courts in this area of the law. It can and must be remedied.

This is not to say that every witness must be found truthful or a liar. The ALJ, like any finder of fact, may accept or reject all the testimony of a witness, or any part of that testimony. Indeed, the ALJ must be free to admit that he or she cannot determine the truth on a given point, and then decide the issue according to the burden of proof. But ALJs must let the parties and the reviewing courts know, in some intelligible fashion, where they stand on the pivotal issues of fact posed by the applications they adjudicate.

The plaintiff in this action seeks judicial review of the final decision of the Secretary of Health, Education, and Welfare (the "Secretary"), which upheld the decision of the ALJ terminating plaintiff's disability benefits insurance as of November 30, 1976. 42 U.S.C. § 405(g). Richard Chiappa is a thirty–four year old man who worked as a New York City police officer until he was shot in the left arm on June 7, 1973. The shot resulted in a compound fracture of that arm. In December 1973, due to instability of his left arm, plaintiff fell and fractured his right elbow. In July 1974, he underwent an operation for his left arm in which a bone graft was performed and a metal plate inserted. He sustained another, mild fracture of the left arm in February 1978. The metal plate was removed from his left arm on April 11, 1979, after which he resumed employment. (Exh. A)

Chiappa applied for disability insurance benefits on October 2, 1973 based upon the severity of the injury to his left arm. He eventually was awarded disability insurance for a period beginning June 17, 1973. (R. 57) In November 1976, however, after reviewing plaintiff's record, the Social Security Administration, Bureau of Disability, determined that his disability had ceased as of

September 1976, and that his benefits should be terminated after November 1976. (R. 60) The termination of benefits was confirmed after reconsideration. On March 8, 1978, a *de novo* hearing was held to review the termination of benefits, and on March 22, 1978, the ALJ found that plaintiff was no longer under any disability as of November 1976. The ALJ's decision became the final decision of the Secretary when it was approved by the Appeals Council on June 23, 1978.

Plaintiff seeks disability benefits from November 30, 1976, when his disability insurance benefits were terminated, through June 15, 1979, when he resumed work. Plaintiff moves for reversal or remand to the Secretary, claiming that the ALJ applied the wrong legal standard in evaluating both the medical reports from his physician, and his complaints of pain; that the ALJ conducted the hearing improperly and thus based his decision on insufficient facts; and that letters from his attending physician submitted for the first time to this Court constitute "good cause" to remand as authorized by 42 U.S.C. § 405(g). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

▮ If the Secretary has applied the proper legal principles, judicial review is of course limited to an assessment of whether the findings of fact are supported by substantial evidence. *Parker v. Harris*, 626 F.2d 225, at 231 (2d Cir. 1980). Nevertheless, the entire record must be examined to insure there is a sound evidentiary foundation for the ALJ's findings and that his decision is rational. Among the factors to consider are: 1) objective medical facts and clinical findings; 2) diagnoses and medical opinions based on those facts; 3) subjective evidence of pain and disability testified to by the claimant and others; and 4) the claimant's educational background, age, and work experience. *Id.* at 231–232. Furthermore, where evidence has not been properly evaluated because of an erroneous view of the law, the determination of the Secretary may not be upheld. *Marcus v. Califano*, 615 F.2d 23, 28 (2d Cir. 1979). Under the stringent standards established in this Circuit and others, the ALJ has failed to make clear that he properly weighed the evidence, and he failed to allow the *pro se* plaintiff a full opportunity to develop relevant evidence at the hearing.

▮ The Second Circuit has repeatedly emphasized that special weight must be given to medical reports submitted by an applicant's attending physician. Here, Chiappa's doctor, Irving Mauer, concluded, among other things, that plaintiff was disabled.[1] *E. g., Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980). Instead of analyzing and evaluating this report, the ALJ seems to have relied exclusively on the report of the agency–appointed physician, Dr. Otto Gordon.[2]

1. Dr. Irving Mauer, an orthopedic surgeon, submitted evidence dating from December 23, 1973, that plaintiff had sustained a radial head fracture of the right elbow. (R. 124) Although a follow–up visit revealed improvement of both the right elbow and the injury to the left arm which resulted from the shooting, Dr. Mauer noted that plaintiff "remains disabled." He continued to follow both of plaintiff's arm injuries during 1974. Despite initial improvement, on March 7, 1974 it was determined that the left arm had not healed properly and that Chiappa "remains disabled." (R. 123) He also noted on April 11, 1974 that plaintiff had pain at his fracture site. In July 1975, due to the malunion of the left humerus, plaintiff underwent an operation in which a bone graft was performed and a metal plate inserted into his left arm. In November 1975, x–rays revealed that there were many metallic bodies in plaintiff's left arm. There was a 35% loss of use of his upper left extremity and limitation of motion of his left elbow and shoulder. (R. 121) On September 14, 1976, in his last report of record, Dr. Mauer stated that plaintiff's condition was essentially unchanged and that plaintiff was to continue in observation. (R. 122)

2. On September 16, 1976, Dr. Gordon reported that plaintiff appeared to have recovered well from his surgery for an "unusually severe left humerus injury." (R. 127) Physical examination revealed that the left shoulder had an 80% normal range of motion, extension and flexion of the elbow lacked 5 degrees respectively, and rotation of the elbow was normal. Dr. Gordon found plaintiff's grip to be normal in power, and no circulatory or nerve problem was present. X–ray examination of the humerus showed that the bone had healed in proper anatomical alignment. (R. 125, 127) Multiple

No doubt this was because much of Dr. Mauer's report was conclusory, and thus deserving of less weight than specific clinical findings. 20 C.F.R. § 404.1526; *see, Laffoon v. Califano,* 558 F.2d 253 (5th Cir. 1977). But the ALJ was required to give more attention to Dr. Mauer's opinion, in light of the Second Circuit rule that "[t]he expert opinions of a treating physician as to the existence of a disability are binding on the factfinder unless contradicted by substantial evidence to the contrary." *McLaughlin v. Secretary of Health, Education and Welfare,* 612 F.2d 701, 705 (2d Cir. 1980). *Accord, Allen v. Weinberger,* 552 F.2d 781, 785 (7th Cir. 1977) ("The opinion of the examining physician that the claimant is totally disabled, though phrased as an ultimate conclusion on the question presented is entitled to consideration as an indication of how severe a patient's impairment was at the time of the examination.") ALJs would avoid this problem if they simply accepted the fact that they have an obligation, virtually amounting to an affirmative duty, to create a record which clearly shows their awareness of the Second Circuit rule governing the opinions of treating physicians.[3]

 The ALJ in this case also failed to evaluate plaintiff's claims of pain. We know that subjective claims of pain alone can establish disability. *Marcus v. Califano, supra,* 615 F.2d at 27. Even objective medical evidence does not preclude a finding of disability, since disabling pain may be psychologically induced. Thus, to resolve this issue properly, it is insufficient for the ALJ simply to report that "[t]he medical evidence shows conclusively that claimant has recovered from the surgical procedures . . ." and "[t]he medical evidence does not establish . . . the impairment is disabling." (R. 13) This reasoning, taken with his failure to discredit plaintiff's claims of pain, makes it entirely possible that the ALJ applied an incorrect legal standard. See *id.* at 28–29; *see also Spicer v. Califano,* 461 F.Supp. 40, 48 (N.D.N.Y. 1978); *Dunbar v. Califano,* 454 F.Supp. 1261, 1267 (W.D.N.Y.1978).

 The failure to evaluate plaintiff's claims of pain is particularly troublesome where, as here, the claimant established he was unable to return to his former occupation, and the burden of proof had thus shifted to the agency to demonstrate that he could engage in substantial gainful activity. In this case, Chiappa claimed he suffered disabling pain, sometimes at frequent intervals, and felt that his anticipated poor work attendance would prevent him from holding a job. (R. 37) The extent to which a disability may prevent regular work attendance is a relevant factor in determining whether a claimant is able to engage in substantial gainful activity:

> "Ability to work only a few hours a day or to work on an intermittent basis is not ability to engage in a 'substantial gainful activity' . . . ." This is not to say that the Board must demonstrate that a claimant is capable of working an eight hour day for under certain circumstances part time employment may constitute substantial gainful activity. [Citation omitted.] But the Board must demonstrate that a claimant can engage in "substantial services with *reasonable regularity* in some competitive employment . . . ."

*Goodson v. Railroad Retirement Board,* 595 F.2d 881, 883 (D.C.Cir.1979), quoting *Rivas*

---

metallic fragments were observed throughout the soft tissues of the upper arm. He concluded that plaintiff's impairment was mild, partial, but apparently permanent. Dr. Gordon stated that plaintiff could do any work save that which would require lifting more than twenty pounds. (R. 127)

**3.** In his last report of record, September 14, 1976, Dr. Mauer only mentioned that the claimant continued to have essentially the same symptoms as he had shown previously. This description is vague; there is no indication which of the symptoms that Dr. Mauer catalogued over a two year period continued to affect plaintiff. Nevertheless, it is a fair reading to assume Dr. Mauer continued to regard plaintiff as disabled since he never noted improvement of any of plaintiff's symptoms or a decrease in pain. Because the ALJ made no ascertainable effort to interpret these reports, it is impossible to guess his evaluation of them.

*v. Weinberger*, 475 F.2d 255, 258 (5th Cir. 1973). *See also Cooke v. Celebrezze*, 365 F.2d 425, 428 (4th Cir. 1966) (prospective employer's fear of absenteeism militates against abstract judgment that jobs are available for claimant).

▇▇▇ Yet, the ALJ conducted the hearing as though work attendance was irrelevant. He specifically refused to allow plaintiff to ask the vocational expert at the hearing whether absenteeism would affect employability, stating that "obviously" the expert witness could not answer that question. But it is far from obvious why the expert could not answer. *See Yawitz v. Weinberger*, 498 F.2d 956, 959 (8th Cir. 1974) (attorney described the intermittent pain his client suffered to a vocational expert, who then testified the pain would interfere with employment). The hearing transcript demonstrates that Chiappa was denied an opportunity to pursue his point (R. 46):

> ADM. LAW JUDGE:–do you have any questions you'd like to ask the doctor?
> CLAIMANT: You know, there's no doubt, sir, on those days where I haven't any pain, that I could do probably those jobs and many others. But, it's not the question that I'm posing. The question that I'm posing is of all these jobs that are available to me, how long are they going to employ me if I take 2 days off a week, or one day off a week, or if, you know, I'm only going to work 3 days a week, it depends on which day, you know. This isn't–
> ADM. LAW JUDGE: Well, that he can't answer, obviously.
> CLAIMANT: Well, that's my problem. That's my problem, you know. The fact that I, that I'm intelligent enough, and that's all the schooling is going to determine, whether I'm intelligent enough to do those jobs, and I could have told them that before.

If the ALJ disbelieved Chiappa's testimony about pain, he should simply have said so, although plaintiff should still have been allowed to obtain the expert's opinion. But since the ALJ failed to make any finding on the issue, the expert's answer was pertinent and a claimant, like Chiappa, acting *pro se*, should be assisted by the ALJ who must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts surrounding the alleged right or privilege." *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 43 (2d Cir. 1972). *See also Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975); *Kenny v. Weinberger*, 417 F.Supp. 393, 397 (E.D.N.Y. 1976).

The Government contends that the ALJ's comments and the evidence clearly show that Chiappa's claim of disabling pain must have been rejected. But they do not. The ALJ made much, for example, of the fact that Chiappa attended college during the period. (Tr. 47) Yet Chiappa properly tried to point out, over the ALJ's interruptions, that going to college four hours a week, for three eight–week semesters a year is far different from engaging in regular work, full–time or part–time. *See, e. g., Ressegiue v. Secretary of Health, Education, and Welfare*, 425 F.Supp. 160, 164 (E.D.N.Y.1977) (two hours a week of college attendance and achieving good grades did not constitute substantial evidence that plaintiff was not disabled); *see also Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979). That Chiappa failed to take pain killers he was prescribed is certainly probative on the issue of his credibility, but his explanation that the drugs do not work and that he does not care to take drugs was at least worthy of comment. (R. 36) Chiappa's ability to take his son sleigh–riding was also noted in the record by the ALJ. Once again, though, this activity was freely admitted by Chiappa and was entirely consistent with his claim that, while he often felt well enough to engage in all normal activities, he would suddenly become debilitated. (R. 36–37)

If speculation were the proper game on review, one could as easily turn to evidence and statements that undermine rather than support the ALJ's conclusions. Chiappa was very seriously injured when he was shot, and an X–ray showed that many shell

fragments remained lodged in his arm. In addition, he had a metal plate in his arm until 1979. Even though the medical evidence indicated his arm was usable and healed, it seems entirely plausible that those foreign objects caused him periodic pain. *See* note 4, *infra.* As for the ALJ's unexpressed findings, it is true that he may have disbelieved Chiappa. It is also possible, however, given the ALJ's marked interest in the fact that Chiappa received $14,-200 annually from the Police Department in retirement pay and that he had received other monies from the federal government, that the ALJ felt Chiappa had been adequately compensated. (*E. g.*, R. 33–35) We cannot insure that any human judge will overcome bias and personal inclination. But the requirement that findings be made, express or fairly implied, is an important vehicle for forcing judges to make reasoned decisions based on law. As Judge J. Skelly Wright explained:

> [T]his is the primary purpose of findings of fact and conclusions of law. It makes you analyze the evidence; it makes you put down your findings, and when you get to this analysis, and when you get to writing out your findings, you may come to different conclusions on certain facts than the impression that you first entertained when you heard the evidence. . . .

Wright, *The Nonjury Trial–Findings of Fact, Conclusions of Law and Opinions*, in Proceedings of the Seminars for Newly Appointed District Judges (1963). *See* Frank, *Courts on Trial* 183 (1963); Frank, *Say It With Music*, 61 Harv.L.Rev. 921 (1948); Note, 61 Harv.L.Rev. 1434, 1437–38 (1948).

█ The case is remanded for a new hearing, at which plaintiff should be permitted to add to the record the letters he has submitted to the Court in the present proceeding.[4] *See* 42 U.S.C. § 405(g). In the meantime, the case is placed on this Court's suspense calendar.

SO ORDERED.

---

4. Plaintiff has submitted two letters, dated November 8 and December 13, 1979, in which his attending physician, Dr. Mauer, states that plaintiff was in "pain up until the time of removal of the hardware from his arm. For this reason I do not feel that it would have been possible for him at that time to have held down a full time job." He also noted that plaintiff had "pain on change of weather." While these letters, not produced at the hearing, may not be considered in determining whether the record is supported by substantial evidence, they may be considered in determining whether to remand for "good cause" as authorized by 42 U.S.C. § 405. *See Carnevale v. Gardner*, 393 F.2d 889, 890 (2d Cir. 1968); *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975); *Estep v. Richardson*, 465 F.2d 969 (6th Cir. 1972); *Terio v. Weinberger*, 410 F.Supp. 209 (W.D.N.Y. 1976). They deserve consideration because they lend a physiological basis to plaintiff's claim that his pain was intermittent. They also suggest, contrary to what the ALJ seems to have assumed, that the bone graft performed in 1975 did not mitigate plaintiff's pain but may have contributed to it.