**Alexander BRADFORD, Plaintiff,**

**v.**

**SECRETARY OF DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. 80 CV 2048 (ERN).**

United States District Court, E. D. New York.

March 2, 1982.

Arthur J. Fried, The Legal Aid Soc., New York City, for plaintiff.

Edward R. Korman, U. S. Atty., E. D. New York, Brooklyn, N. Y., for defendant; Marilyn Go, Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

**MEMORANDUM OF DECISION AND ORDER**

NEAHER, District Judge.

Plaintiff Alexander Bradford brought this action under 42 U.S.C. § 405(g) seeking review of a final decision of the defendant Secretary of Health and Human Services ("Secretary") denying his application for

Social Security disability insurance benefits. Based upon the pleadings, the administrative record and their respective memoranda of law, each party has moved for judgment in his favor. Plaintiff seeks reversal of the Secretary's determination and a direction to award benefits or, alternatively, a remand for a new hearing. The Secretary requests affirmance of his decision. For the reasons stated below, the Secretary's decision is reversed as not supported by substantial evidence, and, in view of the lapse of time, the Secretary is directed to establish a period of disability and pay benefits to plaintiff accordingly.

Plaintiff was 30 years old at the time of the evidentiary hearing on his claim in November and December 1979, and has a high school equivalency diploma. For two years during 1968–1969, he had worked as a spray painter of cabinets and furniture and for the next eight years as a sanitation worker for the New York City Department of Sanitation. During that employment, he attended Kingsborough Community College at night, on a part-time basis, to take accounting courses, and supplemented his income by operating a record shop business with a partner from 1973–1976. He is married and has a 10-year old son.

In August 1975 he suffered an injury to his head when he fell from a sanitation truck and struck the ground head first. He was rendered unconscious briefly, a laceration required stitches, and thereafter he began to have post-concussion headaches and balance and coordination problems. His disability claim, however, is based upon more serious subsequent head injuries, as indicated below.

On March 13, 1977, without provocation, plaintiff was shot from behind five times, three of the bullets entering the back of his head and two in his back. He was hospitalized in critical condition with large fragments of bullet remaining in the occipital and mastoid regions of the skull. He was discharged from Brookdale Hospital on April 6, 1977, totally deaf in his right ear and suffering from periodic headaches, ringing or buzzing in his head several times a day, tearing and blurry vision, backaches, stiffness of the neck, numbness in his hands and loss of equilibrium when walking. On December 4, 1978, while still under medical treatment, plaintiff filed this application for disability benefits.[1] The medical evidence supporting it is briefly summarized below.

From September 12, 1977 until March 27, 1978, plaintiff was treated by Dr. Augustus F. Kinzel, a board certified specialist in psychiatry and neurology. In addition to the sequelae noted above, Dr. Kinzel reported plaintiff's impairment in attention, feelings of terror and fear of being killed, sleep and mood paralysis, and sudden buckling of his left leg. His diagnosis was "post-traumatic neurosis and post-concussion syndrome." Tr. 182.[2] In his opinion, plaintiff's "improvement has been slow" and he is "still totally disabled by condition." He also observed that there was "No known drug treatment for this." *Id.*

Dr. E. Bersen, specialty not identified, saw plaintiff once or twice a month from August 11, 1978 to February 22, 1979. His diagnosis was "Cephalgia, post-traumatic, severe, disabling," and noted that various regimens of treatment by analgesics and sedatives had produced no improvement. Tr. 191–92.

Dr. Alexander Levine, a specialist in psychiatry and neurology, saw plaintiff twice in February 1979. Although finding plaintiff "neurologically negative," he noted that the foreign bodies in plaintiff's skull were sufficient reason for constant headaches, and expressed the opinion that plaintiff "should be considered to be totally disabled." Tr. 189.

Dr. J. Trevor Lindo, a psychiatrist, began treating plaintiff on August 25, 1979, and

1. As noted in the decision of the ALJ (Tr. 16), plaintiff originally made application for disability benefits on April 10, 1978, which was denied on May 22, 1978 and not appealed, but this does not affect his rights under the instant application.

2. References are to pages of the administrative record.

had seen him about twice monthly up to the date of his report, December 14, 1979. He also testified at plaintiff's hearing. In sum, he found plaintiff suffering not only physical but even more severe emotional sequelae from the shooting incident. He noted that plaintiff had become increasingly and progressively isolated and withdrawn socially and vocationally, and even in his marital relatedness given to brooding, sullenness and silence, with a potential for explosiveness that could not be overlooked. Dr. Lindo felt that plaintiff was moderately severely impaired with restrictions on his ability to relate to other people and to function in all sorts of work settings of varying stresses.

On behalf of the Bureau of Disability Determinations, plaintiff was examined by Dr. Arthur M. Meisel, a psychiatrist, on September 18, 1979. In his report of October 9, 1979, he agreed with Dr. Lindo that plaintiff's symptoms were consistent with a psychiatric disorder of moderate severity. He found plaintiff to have

"little structure or focus in his daily activities. Social and interpersonal relationships are characterized by isolation, withdrawal, aggression and anger. The capacity for effective integration of affective and cognitive experiences appeared moderately impaired. Judgment was within normal limits. Insight into his behavior and motivation was poor." Tr. 207.

Dr. Meisel concluded that:

"The prognosis is guarded for recovery of personal, social and vocational capacity. This patient is unlikely to be restored to normal social, personal and vocational functioning within a period of 24 months." *Id.*

His ultimate diagnosis was that in addition to a severe hearing loss, plaintiff suffered from a "Post-traumatic (gunshot) organic brain syndrome." Tr. 208.

In testifying at plaintiff's resumed hearing in December 1979, Dr. Lindo, in response to a question of the Administrative Law Judge (ALJ), was unequivocally of the opinion that plaintiff's psychiatric problems impaired his capacity to concentrate and his ability to relate to other people, rendering it unfeasible for him to undertake even sedentary employment in his present condition. In Dr. Lindo's opinion, plaintiff was definitely in need of psychological testing and a vocational rehabilitation program prior to any employment. Tr. 91–92.

David Malikin, Ph.D., a certified psychologist and professor in New York University's Rehabilitation Program, called by the ALJ as a vocational expert, testified that if he took into account Dr. Lindo's testimony, plaintiff would not be able to work. Tr. 111–12. Following the hearing, however, he supplemented his testimony by letter to the ALJ, Tr. 231, after reviewing a report of psychological testing of plaintiff performed on January 10, 1979. The report's summary section described plaintiff as

"a person who copes by rigid, repression and denial mechanisms whenever he has to face any kind of anxiety provoking situation or threat. He tends to be guarded and evasive in the face of that which is new or when dealing with authority figures. He verbalizes occupational goals that are tremendously competitive and quite obviously not realistic considering his limitations, both academic and intellectual. The Rorschach was rigid, form dominated, emphasizing pervasive mistrust and suspicion that characterizes his response to people, in conjunction with hostility and aggression which lurks beneath the surface, which he represses through various defensive devices." Tr. 226.

Referring to plaintiff's interest in becoming a radio broadcaster, the report recommended that

"his interest in only one area vocationally with the exclusion of all other possibilities would render him virtually unable to be effectively rehabilitated unless he is able to select through counseling a goal that would be more consistent with his modest abilities and realities of his limited vocational choices." *Id.*

Dr. Malikin, noting that the report found plaintiff performing capably "on tests of

clerical and manual aptitude" and "appears to have no significant neurological deficit intellectually," supplemented his testimony as to available clerical occupations by adding "garage attendant, guard-watchman, bench assembler, etc." as service and industrial type occupations plaintiff could perform. Tr. 231.

Dr. Lindo also responded to the ALJ concerning the report, stating his concurrence with the recommendation for rehabilitation, and adding "He's incapacitated & needs help." Tr. 229.

Despite the array of medical diagnosis and opinion pointing to both mental and physical disability, the ALJ concluded that plaintiff "failed to establish that he is under a disability as defined by law." Tr. 16. Although recognizing plaintiff's head wounds, deafness, neurosis and other ailments, it would appear that the ALJ not only rejected plaintiff's claims of disability as not credible but also the findings and opinions of his treating doctors, including the Secretary's own psychiatric consultant, Dr. Meisel, who found plaintiff "unlikely to be restored to normal social, personal and *vocational functioning* within a period of 24 months," despite his "overall appearance of good health." Tr. 207, emphasis supplied.

This is not to say that an ALJ may not evaluate the credibility of a claimant who relies on subjective evidence. But this is not a case in which disability turns upon the severity of subjective pain, upon which the ALJ initially focused. The record is replete with objective medical findings which establish that plaintiff is suffering from a moderately severe neurotic personality disorder that requires an extensive period of vocational rehabilitation before he is able to undertake gainful employment. As noted above, the Secretary's own psychiatric expert attributed plaintiff's condition to a post-traumatic organic brain syndrome caused by severe gunshot wounds to the head.

Functional nonpsychotic disorders are listed among the Secretary's category of impairments, 20 C.F.R. 404, Subpart B, Appendix 1, Part A, and include neurotic and personality disorders. These describe in some detail the clinical signs which manifest such disorders. Among them are persistent periods of anxiety with tension, apprehension, and interference with concentration and memory; persistent patterns of behavior manifested by either seclusiveness or autistic thinking, or pathologically inappropriate suspiciousness or hostility; and persistence of marked restriction of daily activities and constriction of interests, deterioration of personal habits and seriously impaired ability to relate to other people. The psychiatric and psychological studies of this plaintiff fully reveal the objective presence of all these manifestations of mental illness and provide persuasive proof of his disability.

Manifestly, the ALJ, finding plaintiff a young man in physical good health, whose complaints he considered "exaggerated," simply rejected the medical experts' findings as to his mental and emotional disability. The law in this Circuit, however, does not permit such a wide range of discretion. "The ALJ's apparent rejection of the treating physicians' medical conclusions must be evaluated under the rule that '[t]he expert opinions of a treating physician as to existence of a disability are binding on the fact finder unless contradicted by substantial evidence to the contrary.'" *Aubeuf v. Schweiker, Secretary of Health and Human Services*, 649 F.2d 107, 112 (2d Cir. 1981). See also *McLaughlin v. Secretary of H.E.W.*, 612 F.2d 701, 705 (2d Cir. 1980) (*quoting Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978)); *Alvarado v. Califano*, 605 F.2d 34, 35 (2d Cir. 1979); *Chiappa v. Secretary of H.E.W.*, 497 F.Supp. 356, 359–69 (S.D.N.Y.1980). Certainly the bare statement of Dr. Adolph Wolferman that plaintiff had "no disability except deafness right ear" (Tr. 185) is not substantial evidence as that requirement is defined by the courts. See *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

Finally, the ALJ's reliance on occupations plaintiff could perform, as indicated in his decision (Tr. 16), rests entirely on a voca-

tional expert's consideration of plaintiff's *physical* abilities after reviewing a psychological report. Tr. 223 *et seq.* Dr. Malikin, despite his title, is not a medical doctor. Dr. Lindo is, and his views, after reviewing the psychological report, remained unchanged, *i.e.*, that plaintiff is incapacitated by reason of mental illness.

Accordingly, the decision of the Secretary is reversed and he is directed to establish a period of disability and pay benefits to plaintiff.

SO ORDERED.