**Angelica RIVERA, Appellant,**

v.

**Patricia Roberts HARRIS, Secretary of Health, Education, and Welfare, Appellee.**

**No. 586, Docket 79–6152.**

United States Court of Appeals, Second Circuit.

Argued Jan. 16, 1980.

Decided April 14, 1980.

Louis B. York, Manhattan Legal Services, New York City, for appellant.

Peter C. Salerno, Asst. U.S. Atty., New York City (Robert B. Fiske, Jr., U.S. Atty. and Michael H. Dolinger, Asst. U.S. Atty., New York City, on brief), for appellee.

Before FRIENDLY, MANSFIELD and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Appellant Angelica Rivera brought this action in the district court under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of a final determination of the Secretary of Health, Education, and Welfare denying her application for Supplemental Security Income ("SSI") benefits. The district court upheld the Secretary's decision, and Mrs. Rivera has appealed. We affirm.

Appellant was born in Puerto Rico in 1925. She was educated through the eighth grade, has had no vocational training and does not speak English.[1] In Puerto Rico, she helped her father with farmwork and for several years lived with another family and helped them with housework. Appellant came to New York in 1950 and, until her marriage in 1952, lived with her brother and helped him care for his house and children. These are appellant's only work experiences; she first acquired a social security card when she separated from her husband in 1969 and sought welfare benefits for herself and her children. Since her separation from her husband, Mrs. Rivera has been supported by public assistance and has sought no work.

On November 17, 1975, appellant filed an application for SSI benefits claiming disability due to asthma, heart trouble and hypertension. The application was denied initially and on reconsideration. At appellant's request, a hearing de novo was held before an Administrative Law Judge ("ALJ") in February 1977. At the hearing,

---

1. The administrative hearing was conducted with the assistance of an interpreter.

Mrs. Rivera, two of her daughters,[2] and a vocational expert were questioned by the ALJ and by Mrs. Rivera's counsel.

The testimony related solely to appellant's asthma; there appears to have been no evidence tending to show any disability on account of heart trouble or hypertension. Mrs. Rivera testified that she had suffered from asthma for fifteen years, that attacks were generally brought on by housecleaning, walking and allergies but sometimes occurred when she was sitting still, and that her symptoms included shortness of breath, chest pain and wheezing. The attacks last one to two hours and, according to one of her daughters, occur once or twice a week. Appellant also stated that she suffered from headaches and dizziness, and that she had undergone treatment for allergies to mice, greases, dust, mold and foam rubber. When questioned as to her daily activities appellant stated that she "can do only very easy, light work" at home, which includes fixing meals for her children, making beds, washing clothes in her washing machine, going to the supermarket and doing small mending jobs by hand. However, appellant tires easily; she must perform all tasks slowly, must rest for one-half hour to one hour every afternoon, and generally takes taxicabs rather than public transportation because the two-block walk to the closest bus stop is too long.

The medical evidence consisted of hospital reports, diagnoses by physicians who treated appellant and reports of physicians who had examined appellant on behalf of the Secretary. Records of the Metropolitan Hospital revealed that appellant had visited the emergency room numerous times for treatment for asthma attacks in 1974 and 1975. Appellant had been treated by three physicians. Dr. Espejo, who had treated her for some 12 years, stated on June 5, 1976 that her asthma attacks had become more frequent and more severe in the past three years, sometimes occurring daily. He did not opine as to disability. Dr. Nedeljkovic, who had seen appellant some two dozen times since March 1974, reported that appellant had a long history of asthma and that although she had once had hypertension, her blood pressure had returned to normal on her most recent visit. He stated that he could not estimate the extent of appellant's disability without "detailed pulmonary function studies performed in a special laboratory." Dr. Chander Gupta, who began treating appellant within weeks after her application for SSI benefits, reported that appellant was severely asthmatic. He suggested, however, that she was not diligent about her treatments. His December 7, 1976 report stated in part as follows:

She has been very erratic in her follow up & medications.

. . . . .

Hyposensitisation to Dust & Molds was started on 4/28/76. Proper dosage could not be built as Patient did not keep the appointments in the dose building phase.

Dr. Chander Gupta's January 16, 1977 letter to the ALJ repeated that appellant was a "severe asthmatic" and described his treatment, in part, as follows:

to prevent her asthma Hyposensitisation to Dust & Molds was started. As she was erratic in her follow up visits proper doses of allergens could not be built up. In 7/76 with new Inhaled corticosteroid spray Beclomethosone & round the clock bronchodilators she was under good control. But again she was lost to follow up & ran out of medications to have a severe attack.

Each of the two medical witnesses for the Secretary[3] had examined appellant once.

---

2. At the time of the hearing, Mrs. Rivera's two youngest children, ages 12 and 14, lived with her. The 14-year old and a 22-year old married daughter testified.

3. The record also contains a "Psychiatric Evaluation" dated November, 1976 from Metropolitan Hospital. Mrs. Rivera was diagnosed as having "depressive anxiety with anxiety features" and considered to have a "fair" prognosis. In December, 1976, prior to the hearing, Mrs. Rivera's attorney requested that the claimant be examined by a Bureau Disability Determination psychiatrist and a Bureau psychologist. These requests apparently were denied.

Dr. Marasigan, based on pulmonary function tests, stated that appellant "has the breathing capacity to do light medium & heavy activity." Dr. Salomon made findings that were "consistent with broncho-obstructive disease of mild to moderate intensity" and concluded that appellant's "ability to lift, push, pull and even walk is diminished while sitting, standing, fine and gross manipulations is unhindered."

The vocational expert, Dr. Max Dubrow, was questioned by the ALJ as to the types of work available for appellant on the basis of various assumptions. Dr. Dubrow classified appellant's past farmwork and housecleaning experiences as "light" to "medium" work and testified that if appellant suffered from all "the limitations, restrictions, and pains that she allege[d] in her testimony," she would be unable to return to her former type of work activity. When asked to assume that the ALJ would find appellant capable of performing light or sedentary work, Dr. Dubrow stated that there were unskilled factory jobs existing in the economy that appellant would be vocationally qualified to perform in light of her age, education, training and background. Deliberately excluding jobs where there "might be a dust factor," Dr. Dubrow mentioned

> assembly of small parts, as in light manufacturing of small electrical, or electronic parts; packaging of small items, and assembly of small items such as, assembly of ball point pens; plastic toys; novelties; optical goods. All seated, not requiring any of the physical demands of lifting, bending, stooping, kneeling; these are jobs where the work is usually presented to the worker, either on a conveyer, or by another person. All the duties can be learned on the job.

In response to questions posed by claimant's attorney, Dr. Dubrow stated that the jobs in question probably would not allow for "nap time in the afternoon," or have "unlimited tolerance for sick leave." He stated that the jobs he described would be "relatively" dust-free, although there is dust everywhere. As to specific employers he identified, he stated that appellant would be required to use public transportation to and from her home.

Based on the above evidence, the ALJ concluded that while the "claimant does have asthma, with an underlying allergic condition," she "has no impairment or combination of impairments of such severity as to preclude her from engaging in substantial gainful activity." Citing to the report of Dr. Salomon and the testimony of Dr. Dubrow, he concluded that appellant was able to perform light and sedentary tasks and that in view of her education, training, background and residual capacity there were jobs in the national economy which she could perform. The decision of the ALJ became the final decision of the Secretary when it was approved by the Appeals Council on June 16, 1977.

Appellant contends here, as she did in the district court, that the ALJ took insufficient account of the opinions of her treating physicians and of her own testimony as to pain and disability. In addition, she contends that the vocational expert failed to give sufficient consideration to her impairments, education, age and work experience.

Under subparagraph (A) of 42 U.S.C. § 1382c(a)(3), an individual is disabled for purposes of receiving SSI benefits "if he is unable to engage in *any substantial gainful activity* by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." (Emphasis added.) Subparagraph (B) of that section provides:

> For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job

vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

■ In assessing disability, several factors are to be considered: (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or other; and (4) the claimant's educational background, age, and work experience. *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir. 1978); *Gold v. Secretary of HEW,* 463 F.2d 38, 41 at n. 2 (2d Cir. 1972).[4] It is not the function of a reviewing court to consider the question of disability *de novo.* Rather, judicial review is limited to an assessment of whether the Secretary's findings are supported by substantial evidence; if they are supported by such evidence, they are conclusive. 42 U.S.C. §§ 405(g) and 1383(c)(3); *Bastien v. Califano, supra,* 572 F.2d at 912; *Gold v. Secretary of HEW, supra,* 463 F.2d at 42.

■ On the record before us we cannot say there was not substantial evidence to support the Secretary's finding that appellant was capable of performing light or sedentary activity or the finding that light and sedentary gainful activities exist in the national economy which could be performed by appellant. While the record amply demonstrates that appellant suffered from asthma, none of the reports submitted by appellant's own doctors expressed the view that she could not perform light or sedentary activities. *Compare Bastien v. Califano, supra,* 572 F.2d at 912. One of her attending physicians indicated that he could not assess the extent of her disability without substantial laboratory testing; another indicated that certain treatment left her "under good control," although continued improvement may have been hampered by her fail-

ure to follow a prescribed course of treatment.[5] The opinions of treating physicians are entitled to considerable weight, *Bastien v. Califano, supra* ; but the opinions of appellant's doctors neither provide clear evidence of the existence of a total disability nor contradict Dr. Salomon's view that appellant has the unhindered ability to sit, stand, and perform fine and gross manipulations. There is thus no indication that the ALJ did not give full credence to the reports of appellant's treating physicians.

Nor is there any indication that the ALJ refused to consider fully appellant's own testimony, which, like the reports of her physicians, was inconclusive. *Compare Marcus v. Califano,* 615 F.2d 23 (2d Cir. 1979). Her testimony showed that despite her pains and shortness of breath, she can cook, sew, wash and shop, so long as she does these chores slowly and takes an afternoon rest. Taken as a whole, appellant's testimony did not preclude the possibility that she could perform gainful activity of a light, sedentary nature.

■ Section 1382c(a)(3)(B) expressly provides that inability of the claimant to do his previous work does not constitute disability if there is any other kind of substantial gainful work available. With appellant's personal situation in mind, the vocational expert listed several job possibilities for an unskilled, sedentary worker in a relatively dust-free environment. While it may be unlikely that an untrained 51-year old with an 8th grade education, who would require a leisurely pace of work and at least a half-hour afternoon rest and perhaps substantial sick-leave, would receive many offers of employment, § 1382c(a)(3)(B) specifically precludes consideration of whether the claimant "would be hired if [s]he applied for

4. Although these criteria were formulated in the context of claims for social security disability benefits under 42 U.S.C. § 423 rather than SSI benefits under 42 U.S.C. § 1382c, § 423, as amended in 1968, and § 1382c, introduced in 1972, employ virtually identical language to define "disability."

5. The ALJ found that in her existing condition appellant was able to perform light and seden-

tary activities. It does not appear that he relied on 20 C.F.R. § 416.918 which provides, in effect, that an individual, who has a disabling impairment that *is* amenable to prescribed treatment which could be expected to restore his ability to work, cannot be found "disabled" if he "willfully fails" to follow such prescribed treatment.

work." In the face of this congressional mandate, we cannot say that there is not substantial evidence to support the Secretary's rejection of appellant's contention that she is disabled from performing "any . . . substantial gainful work which exists in the national economy . . . ." [6]

Affirmed.

---

**6.** In reaching this conclusion, we do not preclude the possibility that proof as to inability to attend a job regularly, at least if combined with other factors, might support a finding of disability. *See Montgomery v. Weinberger,* 514 F.2d 1211, 1214 (6th Cir. 1975).