**Peter LAPETINA, Plaintiff,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. 79 C 1098.**

United States District Court, E. D. New York.

Oct. 23, 1980.

Marc L. Ames, New York City, for plaintiff.

Edward R. Korman, U. S. Atty., Eastern District of New York, Brooklyn, N. Y., by Richard H. Dolan, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

This action to review a denial of Social Security disability insurance benefits to plaintiff was initially referred to a United States Magistrate to review the administrative record, hear the contentions of the parties and report to the court his recommended disposition of the Secretary's motion for judgment dismissing the action. The matter is now before the court on the Magistrate's recommendation that the case be remanded to the Secretary "for further analysis of the evidence and for an amended decision which will permit effective review" of four issues referred to in the Magistrate's report.

After an independent searching review of the record, the briefs of the parties, the Secretary's objections to the Magistrate's recommendation and plaintiff's additional brief in support of remand, the court is of opinion that the Secretary's determination adequately took into account all essential matters objected to by plaintiff, is supported by substantial evidence and should be affirmed.

Plaintiff, 44 years of age at the time of his hearing in September 1978, was formerly employed as a truck driver for some 23 years. There is no question that on February 9, 1977, while unloading a heavy delivery order, plaintiff suffered an injury to his back, later diagnosed as a herniated lumbar disc, which has disabled him from returning to his former occupation. During the 19–month period following his accident until the date of the *de novo* hearing on his disability benefits claim, plaintiff remained at home except for two weeks in June 1977

when he was hospitalized and under the care of Dr. Joseph Saal, an orthopedic surgeon, who had first examined him shortly after the accident. In February 1977 Dr. Saal found through x-ray examination that plaintiff had a "mild" scoliosis of the lumbar spine to the left with some "ballooning" of the discs, but the intervertebral spaces were well maintained and there was no evidence of fracture. Plaintiff's treatment at that time consisted of bed rest on a firm mattress and bedboards, medication and muscle relaxants, and a recommendation that he wear a corset. At that time he was considered "totally disabled" by Dr. Saal.

Plaintiff was again x-rayed during the June 1977 hospitalization and the examining radiologist, Dr. Wolf Rosenkranz, did not identify any fractures or dislocations and found the disc spaces of the lumbosacral spine "well maintained throughout and in normal anatomic alignment." His impression at that time was that plaintiff's lumbosacral spine was "normal." Based upon the x-ray examination and a negative neurological examination, Dr. Saal discharged plaintiff from the hospital at his own request on June 14, 1977, with a final diagnosis of "herniated lumbar disc."

On November 7, 1977, Dr. Saal provided a report by telephone to the Social Security Administration as to plaintiff's then current condition. The report repeats the diagnosis of herniated disc of the lumbar spine but with no neurological abnormality or sensory abnormalities. Dr. Saal advised that plaintiff could walk and sit for indefinite periods of time but is restricted in lifting and bending. He had a normal range of motion for grasp and manipulation and in Dr. Saal's opinion he was only "partially disabled" and could definitely handle a sedentary job and possibly a light job.

Beginning November 18, 1977, plaintiff came under the care of Dr. George J. Seaman, also an orthopedic surgeon, in connection with plaintiff's Workmen's Compensation disability status and also as a treating doctor whose office plaintiff had visited some 54 times for galvanic current treatments. Dr. Seaman testified that in his opinion plaintiff has a severe limitation of any significant physical activity, by which he meant that plaintiff could not undertake work activity requiring bending, lifting, straining or pushing, although plaintiff's physical condition would permit "sedentary activity." He agreed there were some jobs plaintiff could do, specifically a job in the jewelry trade, but not one which would require a tremendous amount of mental concentration, and he cautioned that plaintiff might have some difficulty using public transportation at rush hours.

Dr. Thomas T. Forschner, a specialist in physical medicine and rehabilitation, examined plaintiff on February 21, 1978 as a consultative medical expert at the request of the Social Security Administration. His report notes that plaintiff was taking no medication orally but receiving heat treatments three times a week for what was "considered . . . a herniated disc." Dr. Forschner also observed that plaintiff appeared to be in no acute distress, ambulated normally and was wearing a brace for lumbar support. X-ray examination of the lumbosacral spine revealed normal mineralization of the vertebral body and no evidence of osteoarthritic changes. His impression was that plaintiff had "low back syndrome," although he had no myelogram or EMG study to evaluate "a possibility of nucleated disc."

Dr. Forschner also found all of plaintiff's musculoskeletal systems normal and without neurological involvement or atrophy, except for some restriction of motion in the spine. He concluded that plaintiff had unlimited ability to stand and to sit and that his grasp and ability to manipulate were normal. Dr. Forschner was unable to determine how far plaintiff could walk or how many pounds he could lift and noted complaints of pain by plaintiff when he was required to bend, for which the doctor recommended continuing physiotherapy.

On May 3, 1978, plaintiff was notified that a *de novo* hearing on his disability claim would be held on June 7, 1978. That date was postponed until September 14, 1978. In the interim plaintiff was exam-

ined on June 20, 1978 by a psychiatrist, Dr. Leon Olinger. Plaintiff complained of "continuous depression," loss of interest in his environment and friends, feelings of helplessness and hopelessness, lower back pain and avoidance of social contacts. The doctor's report noted that "Mr. Lapetina came to the office by himself" and was "carelessly dressed . . . [and] unshaved." Dr. Olinger's diagnosis was "reactive depression, chronic" with a recommendation for specified medication and "supportive psychotherapy" to help plaintiff develop insight into the factors that triggered his depression. It is noteworthy that on March 31, 1978, less than three months earlier, plaintiff had been interviewed at the Social Security Administration office at which time he was observed to be "well dressed" and "well built" and had no difficulties in "relating to people."

Plaintiff and his wife testified that he spends most of his day "laying down" and sleeps between 11:30 p. m. and 9:00 or 10:00 a. m., taking the medication given him by Dr. Olinger. He stated he can walk one or two blocks, can stand for a half–hour more or less, and sit from between 15 minutes to a half–hour but cannot bend without pain which shoots down his left leg. During the hearing, which lasted over two hours, the ALJ noted that plaintiff stood up at intervals some seven or eight times. In response to his attorney's questions, plaintiff said he wore his back brace every time he went out the door (Tr. 56). In contrast, Dr. Seaman testified that although plaintiff was told to wear the "corset," he said he could not do so (Tr. 79).

Since in Dr. Seaman's opinion plaintiff had "a severe limitation of any significant physical activity," and only a "very few sedentary activities" which he could do (Tr. 83), testimony was adduced through a vocational expert as to what those jobs were.

The vocational expert testified that taking into account the limitations, restrictions and pain alleged in the oral and documentary evidence, there were eight sedentary[1] occupations for which plaintiff would have transferable skills and the residual functional capacity to perform. These included assembly work in the jewelry industry, grooving in the eyeglass industry, timekeeping, inspection, machine assembly, shipping and receiving, industrial gateman, and grinding work. All were described as entry level jobs, requiring no prolonged training or rehabilitation and no physical or mental exertion beyond plaintiff's demonstrated capacities.

The Court of Appeals in *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980), took occasion again to note that "[i]t is not the function of a reviewing court to consider the question of disability *de novo*. Rather, judicial review is limited to an assessment of whether the Secretary's findings are supported by substantial evidence; if they are supported by such evidence, they are conclusive." Here it cannot be said there was not substantial evidence in the record to support the Secretary's finding that plaintiff was capable of performing substantial gainful sedentary work, especially when both his treating doctors agreed that he could do so. That one of them, Dr. Seaman, qualified his testimony by suggesting possible public transportation difficulties plaintiff might encounter because of his pain does not negate the doctor's ultimate finding that plaintiff had sufficient residual functional capacity to perform substantial gainful work of a sedentary nature. Nor was that finding undermined by the psychiatrist's report that plaintiff was suffering from chronic depression (Tr. 215). Dr. Seaman readily agreed that the jobs plaintiff was "physically capable of doing" did not require a high degree of mental concentra-

---

1. As defined in the Secretary's Rules and Regulations,

   "[s]edentary work entails lifting 10 pounds maximum and occasionally lifting or carrying such articles as dockets (e.g., files), ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a cer-

tain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

20 C.F.R. § 404.1510(b), as amended in Fed. Reg., Vol. 43, No. 229, Nov. 28, 1978.

tion (Tr. 106), and there is no other evidence of mental deficiency.

Plaintiff's challenge to the conclusiveness of the Secretary's findings is predicated upon asserted deficiencies in the decision of the administrative law judge (ALJ), which the Secretary adopted. These add up to some eleven contentions, of which four were thought by the Magistrate to constitute grounds for a remand to the Secretary for purposes of an "amended decision." In the court's opinion only two basic contentions of plaintiff warrant any discussion. First, it is contended that the ALJ erroneously discounted the severity of plaintiff's pain because of his specific finding that plaintiff had no muscle atrophy or neurological abnormality (Finding No. 4 at Tr. 25), contrary to testimony of Dr. Seaman. That finding, however, was preceded by findings that plaintiff had sustained a disc injury producing "intermittent pain which may at times be severe" (*id.*). Nor can there be any question that the ALJ acknowledged "a physiological basis for some of the claimant's pain" (*id.*). The ALJ was not required to accept Dr. Seaman's testimony in totality, when other medical evidence in the record, including x–ray examinations, revealed no visible defects in plaintiff's spine or neurological deficits except a pain restriction upon straight leg raising and lateral bending.

The real question, of course, was not whether plaintiff had a diminished ankle jerk or muscle atrophy in his thigh, but whether his pain was as severe and intractable as he asserted. That claim rested on a substantial subjective element, the credibility of which the Secretary was not obliged to accept without question. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). And, as further noted in *Marcus*, where the ALJ after weighing the objective medical evidence in the record—which was done here in a notably careful manner—has decided to discredit plaintiff's claims of totally disabling pain, then the Secretary's decision is supported by substantial evidence and should be affirmed. That was clearly the case here.

Plaintiff's second contention fares no better. Essentially it is a claim that the ALJ failed in his responsibility to explore more extensively with Dr. Seaman the effect of Dr. Olinger's psychiatric evaluation upon plaintiff's ability to engage in gainful work. The ALJ's responsibility in this case must be viewed in light of plaintiff's representation by counsel who was clearly expert in these matters and who was afforded ample opportunity to question Dr. Seaman about Dr. Olinger's report, which had been obtained at plaintiff's request. As already noted, Dr. Seaman had no doubt that plaintiff "could do some light sedentary work that did not require a severe mental concentration" (Tr. 90). The occupations described by the vocational expert as suitable for plaintiff were all of that type.

The Secretary's determination is affirmed and her motion for judgment on the pleadings dismissing the complaint is granted.

SO ORDERED.