**Ekaterini De La ROSA, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

No. 83 Civ. 5922 (MP).

United States District Court, S.D. New York.

July 10, 1984.

Meltzer & Fishman by Stanley F. Meltzer, Michael Lamb, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., by Nancy Kilson, Asst. U.S. Atty., Annette H. Blum, Regional Atty., Region

II, Dept. of Health and Human Services, New York City, for the Secretary of Health and Human Services.

## OPINION

MILTON POLLACK, Senior District Judge.

Plaintiff sues to overturn the denial to her of disability insurance benefits by the defendant, 42 U.S.C. § 405(g). The case has been submitted to the court upon cross-motions for judgment on the pleadings and administrative record. Rule 12(c) Fed.R. Civ.P. The claim was twice heard and denied relief by an Administrative Law Judge ("ALJ"), twice appealed to the Appeals Council, and the denials were twice affirmed. The denials were essentially on the ground that plaintiff's past relevant work as an assistant fur designer in a mink coat factory, cutting canvasses for mink coats, was considered to be sedentary and that it is clear that plaintiff could return to her past relevant work and is "not disabled" within the meaning of the Social Security Act and Regulations thereunder.

For the reasons appearing hereafter, judgment will be granted in favor of the defendant, dismissing the complaint, with costs.

█ This case comes down to one in which the medical evidence of alleged "disability" to do sedentary work within the meaning of the Statute, 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3), is conflicting and in such case the Secretary may properly credit the opinions of the physicians which contradict plaintiff's claims. The Secretary applied the correct legal principles, weighing all evidence, including medical evidence, and resolved material conflicts in the evidence and the factual findings of the Secretary are supported by substantial evidence. The findings are thus conclusive on this Court. *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir.1980); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978). Indeed, the record shows that none of plaintiff's medical proof took the position that the plaintiff's physical and psychological complaints disabled her from pursuing her former sedentary occupation.

Briefly, the background is as follows.

The plaintiff is 52 years old, is married to a husband who is retired and ill, and has not had any children. In March, 1981 she was struck by an automobile and sustained fractures of the twelfth dorsal vertebra and the left heel (calcaneus).

This plaintiff was engaged in a relatively sedentary type of occupation. She was employed in a factory that made mink coats as an assistant designer and to cut patterns to customers' sizes before the factory made the coat. She operated a sewing machine and made canvas for new coat styles.

█ The doctors who examined the plaintiff on her behalf and on behalf of the Secretary all noted the presence of pain but not disability in the sense that that term is used in the Social Security Administration. Pain and employability are not synonomous. Pain to recover negligence damages does not have the same significance on the question whether one with pain should be paid Social Security benefits.

The medical support for the decision of the Secretary is substantial. The plaintiff's own physicians did not come out at any point and dispute plaintiff's ability in 1982, or later, to resume her previous sedentary occupation. The medical proof on which the Secretary could rely is that plaintiff was not disabled to perform her previous sedentary art work on mink coats and canvases therefor.

Plaintiff relies on a statement by Dr. Gellert, her treating physician, made on July 26, 1982, as follows:

> It is my opinion that this lady is disabled from any walking, climbing stairs, bending, stooping, kneeling, crawling, she also had difficulty in carrying or lifting any heavy objects because of her back and had difficulty doing her work as a housekeeper at home.

In contrast with that statement evidence was adduced of an examination conducted on July 24, 1982 by Dr. Milan Kutanovski,

whose report gives the following contrary information:

Patient walks in the examining room carrying a cane for support and holding it in her right hand. She is able to walk without a cane and one observes obvious limp favoring the left lower extremity.

Again, on August 5, 1982, the plaintiff was examined by "Mobile Health Care" in Forest Hills, New York, and the examining physician reported

She came in with a cane in the right hand and her ankle was wrapped in an Ace Bandage and was walking in a limping gait. She could come in by herself, she did not need any assistance. She did not show any incoordination or mannerisms or tics.... She stated she had gone to Dr. Geller (sic) for the last 2 years and he has done all the treatment and even acupuncture but did not help, so she is being asked that she should go and have exercises. That's why during the day she sometimes goes out around the block, and goes out, takes time because she cannot stand up more than three minutes and because of the pain and she has to sit down.

Dr. Gellert communicated on May 3, 1982 with the Claims Department of Liberty Mutual Insurance Company in connection apparently with the negligence claim being pursued on the automobile accident. He wrote, among other things:

I have continued to see and treat Mrs. De La Rosa for injuries incurred in her accident.... She has good ankle range and has regained a few degrees of subtalor motion but continues to limp and walks with elastic ankle support and a cane. She has sneakers and shoes made by Dr. Adler, a podiatrist, are said to be available, but she cannot afford to pay him directly.... Her back is less in spasm but she still has to move carefully. She wears a corset which is poorly fitting because of weight gain.

X-rays taken today show that the calcaneal fracture appears to be healed.... She remains in pain and continues to be disabled for walking, bending, stooping and kneeling.

I plan to re-institute therapy to strengthen her back muscles and try to wean her from her back support and also try to increase her subtalor range.

It would help her mobility if Liberty Mutual could pay Dr. Adler directly for his foot orthosis and shoes.

Subsequently, on August 16, 1982, Dr. Gellert wrote to the Liberty Mutual Insurance Company again, as follows:

I saw her in my office on July 20, 1982 at which time she still *walked* with a cane and a limp. She has moderate pain. (Emphasis added).

Finally, on November 18, 1982, Dr. Gellert, in another letter to Liberty Mutual, wrote:

Although she complains of a great deal of pain in her back and left heel, there is no question that she is functioning on a higher plane. She continues to *walk* with a cane and uses a plastic inner sole made by Dr. Adler for only a short time. (Emphasis added).

Recent x-rays show her calcaneus fracture is solidly healed and she has full range of dosi and plantar flexion and inversion and eversion of her foot. I was able to test her posterior tibial nerve and found no compression of her medial or lateral plantar nerves.

X-rays of her back show compression at D–12, but there is bony bridging between D–11 and –12, which suggests that the fracture is stable.

She remains disabled by virtue of her psychopathology and deeply rooted pain syndrome. I do not feel that vocational rehabilitation is indicated.

I will continue to see her periodically to provide emotional support.

In addition to the foregoing, Dr. Gellert reported, on July 26, 1982, that

In addition to her physical disabilities, she has a chronic post traumatic stress disorder, manifested by anxiety, depression, insomnia, and phobias.

In that connection it is noted that Dr. Gellert had prescribed no pain medication for plaintiff since 1981, and that plaintiff's desire to remain at home, according to Dr. Gellert, was to care for her sick husband. When examined by Dr. Balensweig, an orthopedist, who apparently examined the plaintiff in connection with the automobile liability claim, he wrote that:

> Part of plaintiff's reaction is somewhat histrionic ... and part of it is her .. reaction to her disability.

and Dr. Kutanovski, on his examination of July 24, 1982, wrote that:

> The amount of pain expressed by the patient was somewhat out of proportion to the pressure applied.

Mobile Health Care, which examined the plaintiff on August 5, 1982, reported concerning mental status as follows:

> The patient was well oriented to time, place, and person. She knew this was August 5, 1982 and this was the West Side Clinic where came to see the psychiatrist from here for Disability. She was surprised to see a psychiatrist because she was referred to be seen by an orthopedist or other doctors. Her remote and recent memory was good. Her counting and calculation was good. She could do simple addition, multiplication, subtraction and division. Her intelligence was average. Her retention and recall was fair. She had fair insight into her illness. She had good judgment. She could say that she could drop a letter in the mailbox when she found it stamped, sealed and addressed in the street. She would call the usher if there was a fire in the crowded theatre. Her affect was somewhat bland and mood was also somewhat depressed. She denies of any delusions, hallucinations, persecutory ideations, compulsions, phobias, or neolistic ideations, or hypochondriacal ideations. She says that she never had any psychiatric problems and she was never in any psychiatric hospital. Her verbal productivity was good. She had spontaneous flow of stream of thought. There was no halting, hesitancy, looseness of associations, echolalia, neologism, language deviations. Her reaction time in responding was about five seconds. She was dressed fairly well and appropriately and related fairly well to the interviewer.

The Mobile Health Care physician diagnosed the situation as "Adjustment reaction of adulthood with mixed emotional features, post-traumatic."

There was no showing from any doctor for the plaintiff and the doctors for the defendant disputed that plaintiff was unable to engage in substantial gainful activity by reason either of a physical or mental impairment or both. No such impairment was demonstrated by evidence supported by data obtained by medically acceptable clinical and laboratory techniques.

Based on the relevant and credible medical evidence and on the hearing record, the ALJ found that "Claimant retains the capacity for light work" and that "Since the claimant's past relevant work as an assistant for a fur designer is considered to be sedentary, it is clear that the claimant could return to her past relevant work. In conclusion, the Administrative Law Judge directs a finding of 'not disabled'."

In reporting the determination to the plaintiff that she was not entitled to disability insurance benefits, an explanatory rationale of the determination was furnished as follows:

> The determination on your claim was made by an agency of the State and not by the individuals or agencies who submitted reports.... You said you were disabled because of fractures and a back problem. The medical evidence shows that you have had pain and stiffness with some restriction of your activities. Since you were treated, your condition has improved.
>
> Although you may have some discomfort and restriction of your personal activities, your condition does not interfere with your ability to perform work-related duties.

The personal aspersions cast by the plaintiff's brief against the ALJ in this case

were unjustified, out of order, and in bad taste. In contrast thereto, the barrier to recovery here was not a policy to ignore court holdings by the Secretary's Hearing Officers. The fault here is counsel's failure to distinguish the advocacy of pain for purposes of achieving a full recovery on a negligence case resulting from an automobile accident and the advocacy of one's inability to do sedentary work to obtain Social Security benefits.

The complaint herein is dismissed, with costs.

So Ordered.