Carmine **DIBERNARDO**, Plaintiff,

v.

Shirley S. **CHATER**, Commissioner of Social Security,[1] Defendant.

No. 94 CIV. 7520(JES).

United States District Court, S.D. New York.

Oct. 6, 1997.

---

1. Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–296, the functions of the Secretary of Health and Human Services in Social Security cases were transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with section 106(d) of Pub.L. 103–296, the Court deems the complaint amended to substitute Shirley S. Chater, Commissioner of Social Security, for Donna E. Shalala, Secretary of Health and Human Services, as defendant.

Jerry Cohn, Weiss & Wexler, P.C., New York, NY, for Plaintiff.

Mary Jo White, United States Attorney for the Southern District of New York, New York, NY (Linda A. Riffkin, Assistant United States Attorney, of counsel), for Defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Carmine Dibernardo brings the instant action challenging a decision of defendant Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits for the period between February 23, 1991, and September 13, 1993. Pursuant to Federal Rule of Civil Procedure 12(c) and 42 U.S.C. § 405(g), Dibernardo moves for judgment on the pleadings, or in the alternative for a remand and new hearing, and the Commissioner cross-moves for judgment on the pleadings. For the reasons set forth below, Dibernardo's motion is denied and the Commissioner's motion is granted.

## BACKGROUND

Plaintiff Carmine Dibernardo was born on September 13, 1943, in New York. See Transcript of Administrative Record ("Tr.") at 31. Dibernardo lives in a two-family house in Queens with his mother, wife and two of his children and has lived there for over nineteen years. Tr. at 31. His formal education ended after two years at high school in Brooklyn and he has held various jobs since then as a truck driver, merchant seaman and most recently as a vehicle service attendant for a rental car company at Kennedy Airport. Tr. at 32, 35, 141. Dibernardo held a commercial driver's license under the 'B' and 'P' classifi-

cations for a heavy, single unit truck with power brakes. Tr. at 33.

On February 23, 1991, while working as a service vehicle attendant, Dibernardo slipped on ice that had formed on the ground and injured his back. Tr. at 43. He was taken to the Kennedy Medical Center in the airport where x-rays were taken and a sprained back was diagnosed. Id. Dibernardo visited five doctors at Kennedy Medical Center over the next two to three weeks, receiving therapy and a prescription for Tylenol with codeine. Tr. at 44.

From March 1991, through June 1993, Dibernardo was examined and treated by Dr. King, an orthopedic surgeon.[2] Tr. at 45, 112–27. Dibernardo met with Dr. King on a monthly basis to satisfy the treatment requirements set forth by the Workers' Compensation Board. Tr. at 112–127. Dr. King diagnosed Dibernardo as having a low back sprain and contusions of the back muscles, neck muscles, and of the left shoulder, tenderness and restriction of motion in the lumbar spine, and tenderness and pain over the neck and left shoulder. Id. Furthermore, he directed that Dibernardo perform physical therapy and use a transcutaneous electrical nerve stimulation ("TENS") unit. Tr. at 49, 116–17, 121. Dr. King also prescribed the muscle relaxant, Zarisoprodol, for Dibernardo's leg and back pain, and gave him "acenomenophen" with codeine on one occasion. Tr. at 49–50, 123.[3] By October 22, 1992, Dr. King noted that Dibernardo was still experiencing pain, back muscle spasm and restricted motion, but had reached the maximum benefit from treatment, even though he would continue to be seen for Workers' Compensation. Tr. at 118.

On August 12, 1991, a Magnetic Resonance Imaging Scan ("MRI") was taken of Dibernardo's lumbar spine. Tr. at 111. The results revealed a mild annular disc bulging at L3–4 and L4–5 levels, which abut the thecal sac, but do not significantly deform the sac or the neural foramina. Id. Moreover, the

---

**2.** Dibernardo was referred to Dr. King by his family physician. Tr. at 45. In addition, the transcript from the ALJ hearing erroneously refers to Dr. King as "Dr. Kane." Id.

**3.** In reports to the Workers' Compensation Board dated June 25, 1992, and January 11, 1993, Dr. King reported that Dibernardo had chronic "low back" spine derangement, and checked a box indicating "total disability." Tr. at 109–10.

remainder of the intervertebral discs were noted to be normal in appearance. *Id.* No abnormal masses were observed within the thecal sac or paraspinal soft tissues. *Id.* Furthermore, the examiner's impression of the MRI was that Dibernardo suffers from a mild exaggeration of the lumbar lordosis. *Id.*

On February 4, 1992, Dibernardo was examined by Dr. Snow, a neurosurgeon, who noted that Dibernardo complained of low back pain radiating into his leg, and increasing pain with bending and lifting. Tr. at 130. Dr. Snow further noted that Dibernardo wears a back brace. *Id.* Dr. Snow's impression was that it was a normal neurologic exam with the exception of the degenerative lumbar disc disease. *Id.* He did not feel that Dibernardo was an operative candidate or that a myelogram would reveal a significant enough lesion to warrant surgery. *Id.*

Pursuant to his application for a Workers' Compensation claim, Dibernardo was also examined by Dr. Silberman on July 9, 1991, December 3, 1991, and May 5, 1992. Tr. at 131. Dr. Silberman noted that Dibernardo had been examined by Dr. Snow, but disagreed with Dr. Snow's conclusion. *Id.* Dr. Silberman stated that in his opinion Dibernardo shows clinical evidence of a herniated disc, that a CT Myelogram would be of benefit to document discogenetic pathology, and that Dibernardo should have surgery if the Myelogram is positive. Tr. at 57, 132. Furthermore, Dr. Silberman explained that Dibernardo had received the maximum benefits from physical therapy and presents a marked degree of partial disability in the sense that with a low back brace Dibernardo could perform a very limited, light duty type of work on a part-time basis without multiple bending or any lifting. Tr. at 132.

On October 15, 1992, a CT Scan and an electrodiagnostic study ("EMG") were performed on Dibernardo. Tr. at 164. The CT Scan did not show any evidence of a disc bulge, herniation or neural impingement. *Id.* However, the examiner's impression was that

the CT Scan did substantiate a Grade 1 lytic spondylolisthesis. *Id.* Moreover, Dr. Colon, who conducted the EMG, concluded that while Dibernardo showed normal latencies in both motor nerve and sensory nerve conduction, there was electrical evidence of bilateral multi-level lumbosacral radiculopathy affecting the posterior rami and the left L5–S1 anterior rami. Tr. at 134.

On September 30, 1992, Dibernardo filed an application for disability insurance benefits, alleging disability as of the date of his accident. Tr. at 13. His claim was denied initially and after reconsideration. *Id.*[4] Dibernardo requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 9, 1993. *Id.* At the hearing, the ALJ received testimony from Dibernardo, represented by counsel, and Dr. Katz, a Board–Certified Orthopedic Surgeon and medical expert employed by the Office of Hearings and Appeals. *Id.* Furthermore, the ALJ received into evidence numerous medical notes and reports concerning Dibernardo. Tr. at 13–19, 69–163.

Dibernardo testified that he rarely gets a full night sleep due to back pain and headaches and his typical day consists of sitting on the sofa and resting. Tr. at 55. Furthermore, Dibernardo testified that while he occasionally will drive his wife three blocks to the supermarket, he never goes in or does any of the shopping. *Id.* Moreover, Dibernardo stated that he walks with the aid of a cane, wears a back brace which Dr. King prescribed to him in 1991, and was advised by Dr. King not to do any work such as lifting or bending as such activity would aggravate his condition. Tr. at 48, 56.

Dr. Katz testified that Dibernardo suffers from degenerative lumbar disc disease, but found no sign of a herniation or spinal stenosis which would call for an operation. Tr. at 58–60. Furthermore, Dr. Katz, relying on Dr. Snow's reports, concluded that Dibernardo does not show any neurological impairment or herniation because the disc degeneration documented does not press hard

---

4. On October 28, 1993, Dibernardo was examined by Dr. V. Khachadurian, after Dr. King retired, who stated that Dibernardo had clinical and radiographic evidence of disc herniations at L3–L4 and L4–L5 with positive left sciatica. Tr. at 162. Dr. Khachadurian further stated that Dibernardo was totally disabled. *Id.*

enough or deep enough on the thecal sac to cause any type of impingement, which is necessary in order to restrict a person's ability to sit. Tr. at 59, 65. In addition, Dr. Katz stated that Dr. Silberman's opinion of a herniated disc was pure speculation since that opinion rested on the circular assumption that it would be confirmed by a Myelogram, which was never performed. Tr. at 63. Dr. Katz concluded that Dibernardo should be able to perform sedentary work for six hours at a time and should have a lifting capacity of ten pounds maximum. Tr. at 60–61. However, Dr. Katz testified that if there were radiographic evidence documenting some form of nerve impingement, it might change his conclusion. Tr. at 66.[5]

On March 24, 1994, the ALJ rendered a decision partially favorable to Dibernardo concluding that he has a residual functional capacity to perform a full range of sedentary work. Tr. at 10. Pursuant to the Commissioner's Regulations and Vocational Rules, this determination, coupled with his limited education and past work experience, resulted in a finding that Dibernardo became "disabled" within the meaning provided by the Social Security Act on his fiftieth birthday, September 13, 1993, since he was no longer classified as a "younger" individual but came under the classification "closely approaching advanced age." Tr. at 10–13; *see also* 20 C.F.R. § 404.1569 of Regulations No. 4 and Rules 201.09 and 201.18, Table No. 1 of Appendix 2, Subpart P.

On May 12, 1994, Dibernardo filed for a review of the unfavorable portion of the ALJ's decision, which was denied by the Social Security Administration's Appeals Council on August 26, 1994. Tr. at 3–4, 6.

On October 17, 1994, Dibernardo filed the instant action with respect to the unfavorable portion of the ALJ's award arguing that he became disabled and unable to perform any work due to severe back and leg pain as of February 23, 1991. Specifically, Dibernardo claims that (1) the ALJ failed to give proper

weight to the opinion of the treating physicians as to Dibernardo's degree of disability; (2) the ALJ's determination of the residual functional capacity was not supported by substantial evidence; (3) the ALJ did not properly evaluate Dibernardo's subjective complaints of pain and functional limitation; and (4) the ALJ failed to properly develop the medical record. Pursuant to Federal Rule of Civil Procedure 12(c) and 42 U.S.C. § 405(g), Dibernardo moves for judgment on the pleadings, or in the alternative for a remand and new hearing, and the Commissioner cross-moves for judgment on the pleadings.

## DISCUSSION

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g) (Supp.1997); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); *see also Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir.1980). Substantial evidence has been defined as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427, *quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). If a court finds that there is substantial evidence supporting the Commissioner's decision, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir.1990).

In order to be found disabled, a claimant must be unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

---

**5.** At the close of the hearing, the ALJ directed that the Record remain open until November 30, 1993, for Dibernardo to submit a copy of his CT Scan to the Commissioner since he had failed to bring a copy of it to the hearing, and therefore, Dr. Katz reached his conclusion without having

seen the document. Tr. at 68. Dibernardo submitted the CT Scan on December 1, 1993, which did not show any evidence of nerve impingement. The ALJ did not refer the CT Scan to Dr. Katz.

continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(1) (1991); 20 C.F.R. § 404.1527 (1996). The Second Circuit has summarized the Commissioner's five-step sequential evaluation process for evaluating disability claims as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982); *see also* 20 C.F.R. § 404.1520. The claimant bears the burden of proof as to the first four steps. If the claimant establishes that he or she is unable to perform his or her past relevant work, the Commissioner bears the burden as to determining the claimant's ability to perform other work available in the national economy. *See Berry,* 675 F.2d at 467.

In this case, there is substantial evidence to support the ALJ's finding that Dibernardo retained the capacity to perform a full range of sedentary work, and therefore, under the Commissioner's regulations, could obtain a job in the national economy until he reached the age of fifty for the purposes of step five above. *See* 20 C.F.R. §§ 404.1545 and 404.1546.[6] Under the Commissioner's regulations, sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. *See* 20 C.F.R. § 404.1567. Moreover, the regulations state that although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. *Id.*

Here, the objective medical evidence, including the MRI, EMG and CT Scan, failed to reveal any evidence of a herniation or nerve root impingement. Tr. at 65, 134, 165. Moreover, the "mild" annular disc bulge present in Dibernardo's MRI was noted by the examiner to not be an uncommon condition in adults. Tr. at 111. Nor did Dr. Snow, a specialist, find Dibernardo's condition to be severe enough for a Myelogram, or that any significant herniation or lesion would be found through such a procedure. Tr. at 130. In fact, the examinations by Dr. Snow and Dr. Silberman did not show any sensory or motor deficits. Tr. at 130, 132. Nor did Dibernardo's course of treatment require hospitalization, surgery or long periods of prescribed pain killing medication. Tr. at 16. This is especially true since Dr. Katz testified that without evidence of nerve impingement, Dibernardo would not be restricted from sitting, although his history of muscle spasms might require him to take a break from time to time. Tr. at 60–61. Accordingly, there exists substantial evidence to support the ALJ's finding that Dibernardo could perform the requirements of a sedentary job.

Dibernardo argues that the ALJ failed to properly weigh the opinions of his treating physicians, Dr. King, Dr. Silberman, and Dr. Khachadurian. However, Dibernardo incorrectly relies on the Second Circuit's prior treating physician rule, which has been modified and superseded by the Second Circuit's

---

6. Dibernardo does not dispute that he does not suffer from any impairment or condition that meets the severity of Section 1.05(c) of the Listing of Impairments. Nor is there any dispute that Dibernardo could not perform heavy or light work and therefore could not return to his past work as a merchant seaman, truck driver, or service vehicle attendant.

approval of new regulations issued by the Commissioner. *See Schisler v. Sullivan,* 3 F.3d 563, 568 (2d Cir.1993) (upholding the Commissioner's regulations which modified the prior "treating physician rule" for adjudicating disability claims). Under the new regulations, the Commissioner evaluates every medical opinion it receives, regardless of its source. *See* 20 C.F.R. § 404.1527(d). In determining what weight to give an opinion, the Commissioner considers such factors as the examining relationship, the treatment relationship—including length of treatment and frequency of the examinations, the supportability of the opinion by other relevant evidence, the consistency of the opinion with the record as a whole, and whether the doctor is a specialist. *See* 20 C.F.R. § 404.1527(d). If the Commissioner finds that a treating source's opinion on the issue of the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques, *and is not* inconsistent with the other substantial evidence in the case record, the Commissioner will give it controlling weight. *See* 20 C.F.R. § 404.1527(d)(2).

In this case, the ALJ was not required to give controlling weight to Dr. Khachadurian's opinion that there is clinical and radiographic evidence of disc herniations with positive left sciatica, and that Dibernardo is totally disabled. Dr. Khachadurian had examined Dibernardo only once at the time he formed that opinion and that opinion was inconsistent with the objective medical evidence and Dr. Khachadurian's prescribed course of treatment. Nor did the ALJ have to give controlling weight to the fact that Dr. King marked a box for "total disability" on two Workers' Compensation forms since Workers' Compensation requirements are different than the requirements regarding awards of disability benefits by the Commissioner. *See Rosado v. Shalala,* 868 F.Supp. 471, 473 (E.D.N.Y.1994) (citing *Coria v. Heckler,* 750 F.2d 245, 247 (3d Cir.1984) ("the standards which regulate [W]orkers' [C]ompensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of [W]orkers' [C]ompensation is not binding on the Secretary")).[7]

Finally, the record is less than clear whether Dr. Silberman's statements imply that Dibernardo could not engage in sedentary work. Although the ALJ omitted the words "any" and "very limited" from the statement that Dibernardo could engage in "very limited, light-duty type work on a part-time basis without multiple bending or any lifting," Tr. at 15, 132, Dr. Silberman clearly contemplated that Dibernardo could perform certain light-duty work. As such, it was not unreasonable for the ALJ to conclude that the opinion was intended to prohibit lifting of objects having a significant weight, and not a virtual prohibition on all lifting, especially the lifting of objects weighing at most ten pounds. In any event, the ambiguity of the opinion does not form a basis to reverse the ALJ's decision.

Dibernardo also argues that the ALJ failed to properly consider his allegations of pain. The Commissioner's regulations state that the Commissioner will consider statements about a claimant's pain or other symptoms, but they alone will not establish that the claimant is disabled. There must be medical

---

**7.** Under New York law, based on the medical facts and proof, the degree of disability is classified by the Board as either total or partial, and the duration as either temporary or permanent. *See* N.Y. Workers Compensation § 15, Practice Commentaries (McKinney's 1993). Here, it is unclear as to whether Dr. King concluded that Dibernardo was totally disabled to perform his past work, or unable to perform any work at all. *See Diaz v. Shalala,* 59 F.3d 307, 315 n. 10 (2d Cir.1995) (leaving unresolved question of whether doctor who checked off the "total disability" box on Workers' Compensation forms only found plaintiff unable to perform her job as an electrical outlet assembler—the job she held when she suffered a bad fall). Nor is there any indication in the record as to how the Workers' Compensation Board ruled on Dibernardo's application. In any event, even *assuming arguendo* that it ruled favorably on that application, that finding would not be binding on the Commissioner. *See Havas v. Bowen,* 804 F.2d 783, 786 n. 1 (2d Cir.1986) (quoting *Cutler v. Weinberger,* 516 F.2d 1282, 1286 (2d Cir.1975) (" '[w]hile the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the [Commissioner], it is entitled to some weight and should be considered.' "))

244

signs and laboratory findings which show that the claimant has a medical impairment which could "reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence ... would lead to a conclusion that [the claimant is] disabled." 20 C.F.R. § 404.1529(a). Moreover, the Commissioner is responsible for making the ultimate determination or decision about whether the claimant meets the statutory definition of disability. *See* 20 C.F.R. § 404.1527(e)(1); *see also Rivera v. Schweiker,* 717 F.2d 719, 724 (2d Cir.1983) ("although it is clearly permissible for an administrative law judge to evaluate the credibility of an individual's allegations of pain, this independent judgment should be arrived at in light of all the evidence regarding the extent of the pain.").

In this case, the ALJ concluded that Dibernardo's pain would not prevent him from engaging in sedentary work. Tr. 16, 18; *see also Dumas v. Schweiker,* 712 F.2d 1545, 1552 (2d Cir.1983) ("disability requires more than mere inability to work without pain."). Specifically, the ALJ noted that Dibernardo's pain has not required hospitalization, surgery or long periods of prescribed pain killing medication. Tr. at 16. Indeed, Dr. King, Dibernardo's primary treating physician, reported that Dibernardo had received the maximum benefit from treatment and now was treated only with analgesics and physical therapy. *Id.* at 109, 110. Moreover, Dr. Katz specifically concluded that the objective medical evidence supports the conclusion that Dibernardo *does* suffer mild to moderate pain, but that there exists no evidence of nerve root impingement sufficient to restrict his ability to sit. Tr. at 59, 65. Therefore, there is more than substantial evidence in the Record upon which the ALJ could conclude that Dibernardo's pain would not be so severe as to prevent him from engaging in sedentary work.

Finally, Dibernardo argues that the ALJ failed to develop a full medical record by not submitting the copy of Dibernardo's CT Scan to Dr. Katz. Although the CT Scan showed no evidence of herniation of the lumbosacral spine and no neural impingement, it did substantiate Grade 1 lytic spondylolisthesis, which Dibernardo argues is a significant orthopedic abnormality that can be very painful. According to Dibernardo, if the medical expert had been presented with that evidence, he may have concluded that Dibernardo suffered from totally disabling pain. However, the ALJ specifically mentioned the finding of spondylolisthesis in her decision, but concluded, as recited above, that the objective medical evidence and Dibernardo's course of treatment, did not support Dibernardo's allegations of pain. Moreover, Dr. Khachadurian, who opined that Dibernardo was totally disabled and reviewed a copy of the CT Scan, did not prescribe additional medication, recommend surgery, or recommend an alternative course of treatment. Thus, the ALJ's findings remain supported by substantial evidence, and must be affirmed.[8]

## CONCLUSION

For the reasons set forth above, Dibernardo's motion for judgment on the pleadings, or in the alternative for a remand and a new hearing, is denied, and the Commissioner's motion for judgment on the pleadings is granted. The Clerk of Court is directed to enter judgment accordingly and to close the above-captioned action.

It is **SO ORDERED.**

8. The Court notes that the ALJ left the Record open only for the purpose of affording Dibernardo an opportunity to support his claim of a herniation through evidence of nerve root impingement. Since the CT Scan contained no such evidence, and was received after the deadline established by the ALJ, there was no further reason for the ALJ to refer that document to Dr. Katz.